INDIANAPOLIS STREET RAILWAY COMPANY *v*. RAY.

[No. 20,852.   Filed October 24, 1906.]

1.  APPEAL AND ERROR.—*Initial Attack on Appeal.*—Under §346 Burns 1901, §343 R. S. 1881, a defendant may question the sufficiency of the complaint for the first time on appeal.  p. 239.

2.  SAME.—*Complaint.—Sufficiency.—Initial Attack on Appeal.*— A complaint, attacked for the first time on appeal, is sufficient unless there is a total absence of some essential allegation, mere uncertainty or inadequacy of averment, such as might have been amended upon motion, being insufficient to render such complaint bad.  p. 239.

3.  PLEADING.—*Complaint.—Carriers.—Sufficiency of Averments of.—Street Railroads.*—A complaint alleging that defendant is a corporation organized under the laws providing for the formation of street railway companies and that it is the owner and engaged in operating a line from Union Station to Fairview Park, sufficiently shows that defendant is a carrier of passengers.  p. 240.

4.  EVIDENCE. — *Judicial Notice.—Street Railroads.—Carriers.*— Courts take judicial notice that street railway companies are carriers of passengers.  p. 240.

5.  PLEADING.—*Complaint.—Street Railroads.—Ownership of Car Causing Injuries.—Averments of.*—An allegation, in an action against a street railroad company for personal injuries, that "one of the cars of defendant's road, running south from Fairview Park to the city of Indianapolis" caused plaintiff's injuries, sufficiently shows that defendant was operating such car, the ownership of such car being an immaterial matter. p. 240.

6.  SAME. — *Complaint. — Street Railroads. — Passenger Car. — Averments of.*—A complaint showing that plaintiff sounded the electric bell to be sounded by passengers desiring to get off; that the motorman stopped the car; that said car was a summer car having the seats running transversely; that passengers

alighted at the side by stepping upon a running-board and thence to the ground, sufficiently shows that the car was a "passenger" car.   p. 241.

7.   PLEADING.—*Complaint.*—*Specific Averments.*—*Necessary Implications.*—Facts necessarily implied from the specific averments of a complaint are sufficiently alleged.   p. 241.

8.   SAME. — *Complaint.* — *Street Railroads.* — *Control of Cars.*— *Averments of.*—*Sufficiency of, after Verdict.*—A complaint alleging that plaintiff was, when injured, riding on "one of the cars of defendant's road" sufficiently shows, after verdict, that defendant was operating such car.   p. 241.

9.   SAME. — *Complaint.* — *Carriers.*—*Street Railroads.*—*Passengers.*—*Averments of.*—A complaint alleging that plaintiff was a passenger on defendant's car sufficiently shows the relation of passenger and carrier without an allegation that the fare was paid or offered or that plaintiff had a pass, or was on the car by contract, invitation or consent, such matters being proper matters of proof.·   p. 242.

10.   SAME. — *Ownership.* — *How Alleged.* — An allegation that plaintiff is the owner of the property in question is sufficient without alleging how the ownership was acquired.   p. 242.

11.   SAME.—*Complaint.*—*Carriers.*—*Passengers.*—*Duty.*—A complaint showing that plaintiff was a passenger on defendant's street railroad shows that defendant was under a legal duty to plaintiff.   p. 242.

12.   SAME. — *Complaint.* — *Street Railroads.*—*Agents.*—*Liability for Acts of.*—A complaint showing that plaintiff, a passenger, was injured "on one of the cars of the defendant's road" shows a liability on the part of defendant street railroad company, such company being responsible for the negligent acts of its agents.   p. 243.

13.   SAME. — *Complaint.* — *Street Railroads.* — *Agents.* — *Negligence.*—*Proximate Cause.*—Allegations, in an action against a street railroad company for damages for personal injuries, that plaintiff rang the bell to stop, that the motorman stopped the car, and that while plaintiff was alighting the motorman negligently started the car, thereby injuring plaintiff, sufficiently shows that the motorman was acting in the scope of his employment and that his negligence was the proximate cause of the injuries.   p. 243.

14.   SAME.—*Complaint.*—*Motion to Make Specific.*—*Waiver.*— Where defendant fails to move to make the complaint more specific, defects in the averments thereof are waived.   p. 243.

15. TRIAL.—*Instructions.—Assumption of Facts.*—An instruction that plaintiff is entitled to damages "for being deprived of freedom of action, and social meeting and intercourse with her friends, which you shall believe from the evidence in this cause, she would have enjoyed," does not assume that plaintiff was deprived of her freedom or friends, the language clearly limiting recovery to the proof.   p. 244.

16. DAMAGES.—*Items of.—Separate Actions.—Personal Injuries.*—The items of damage recoverable in personal injury cases are only such as would support a separate action therefor.   p. 245.

17. SAME. — *Negligence. — Proximate Results. — Liability.*—Defendant is legally liable only for the proximate results of his negligence.   p. 245.

18. SAME.—*Negligence.—Physical Injury.—Mental Anguish.*—Damages are recoverable for mental anguish in negligence cases only when there has been a physical impact and where such anguish flows from such impact or where it has its origin or exciting cause coincident with such impact.   p. 245.

19. SAME.—*Speculative.—Negligence.—Remote Results.—Mental Anguish.*—Damages are not recoverable for mental anguish flowing remotely from a physical impact caused by negligence; nor from a reflection or brooding over the plaintiff's physical condition caused by such negligence, such damages being wholly speculative and conjectural.   p. 246.

20. TRIAL. — *Instructions. — Damages. — Physical Injuries. — Mental Anguish.*—An instruction in a personal injury case that plaintiff should recover for medical expenses past and future, loss of earnings past and future and bodily pain and mental suffering past and future, is correct.   p. 247.

21. SAME.—*Instructions.—Negligence.—Damages.—Physical Injuries.—Deprivation of Freedom and Social Intercourse.*—An instruction, in an action for personal injuries, that plaintiff is entitled to recover "for being deprived of freedom of action, and social meeting and intercourse with her friends" is reversible error, since, if such damages are recoverable, they are covered by the general instruction on physical injuries and mental anguish, and, unless specially alleged and proved, they will be presumed to flow from reflection or brooding over the injuries received.   p. 248.

22. APPEAL AND ERROR. — *Erroneous Instructions. — When Reversible.*—Where an erroneous instruction is not corrected or cured by another instruction, and it is impossible to tell whether it injured defendant, the judgment will be reversed.   p. 248.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Action by Elizabeth Ray against the Indianapolis Street Railway Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*F. Winter* and *W. H. Latta,* for appellant.
*Smith, Duncan, Hornbrook & Smith,* for appellee.

HADLEY, J.—Appellee sues to recover damages for injuries alleged to have been received in alighting from a car in the city of Indianapolis, through the negligence of the defendant in prematurely starting the car. She was not thrown, but claims she received a severe twist or jar, which provoked to activity a dormant nervous disorder. The issue was formed by the general denial. There was a trial by jury, and verdict and judgment for appellee over appellant's motion for a new trial.

(1) Appellant assigns as independent error the insufficiency of the complaint to state a cause of action. If the question arose upon a demurrer to the complaint, we should have a different question from the one before us. In the circuit court the appellant appeared to the action, filed an answer, subpœnaed witnesses, made costs, went to trial, occupied the time of the court, and, after the verdict and judgment had gone against it, now seeks to put all the proceedings to naught by pointing out deficiencies in the complaint. There is no doubt of the right, under §346 Burns 1901, §343 R. S. 1881, to make the assault at this time, but to be successful the assailant must be able to show a total absence from the complaint of some material averment, or the presence of some averment that destroys the plaintaiff's right of recovery, "but," says this court, in *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 54 L. R. A. 396, 83 Am. St. 200, "mere uncertainty

or inadequacy of averment, such as might have been amended and cured upon motion seasonably made, will be deemed to have been waived by a defendant who proceeds with the trial to final judgment without objection, and who brings his complaint for the first time, after the cause of action has been strengthened by the verdict of a jury, and the presumption indulged in favor of the decisions of the trial court upon motions for judgment, and for a new trial." *Lengelsen* v. *McGregor* (1904), 162 Ind. 258. While the allegations relating to material facts are—some of them at least—vague and uncertain, yet it cannot be said that there is a total absence of allegation of the existence of any one of them.

The first objection to the complaint is that it does not charge that appellant is a carrier of passengers. It is alleged that the defendant is a corporation organized and acting under the laws of Indiana authorizing the formation of street railway companies, and was the owner of and engaged in operating various lines of street railways in the city of Indianapolis, among others, a line running from the Union Station to Fairview Park.

The principal object of the legislature in authorizing, and of corporations in constructing, street railways, is the carriage of passengers. It is so recognized by statute (§5458 Burns 1901, Acts 1897, p. 201, §1), and is a matter of such common knowledge that the courts will take notice that a company organized and operating a street railway under the laws of this State is a carrier of passengers. *Hipes* v. *Cochran* (1859), 13 Ind. 175; *Fitzpatrick* v. *Papa* (1883), 89 Ind. 17; *State* v. *Downs* (1897), 148 Ind. 324, 328; *Ervin* v. *State, ex rel.* (1898), 150 Ind. 332.

The second objection is that there is no allegation that appellant owned the car. The allegation is that the plaintiff was riding on "one of the cars of the defendant's road, running south from Fairview Park to the city of Indianapolis." The defendant was operating the

particular street railway, and, if the plaintiff was a passenger on "one of the cars of that road," that is, used in the operation of that road, it made no difference whether the car belonged to the defendant or not.

The third objection is that it is not alleged that the car was a "passenger-car, or one used for the carriage of passengers." It is alleged that she desired to leave

6. said car at New York street, and before the car arrived at that street "she sounded the electric bell provided in said car to be sounded by passengers to announce their desire to leave the car at the nearest street crossing; that the motorman in charge of said car stopped it at New York street. Said car was known as an open or summer car, with seats running across the car from side to side. The entrance and exit from the car was by means of stepping onto a board running along the side of the car, known as a running-board, and thence into the car, and from the car onto the running-board and thence onto the ground. It also had handles upon the sides of the car, "for the assistance of passengers entering or departing from the car." Here we have a car provided with electric signals to be sounded by passengers to announce their desire to get off; a car that is known as a summer or open car—one with seats running across the car from side to side, and with a running-board to assist passengers in getting on or off the car. This was a sufficient identification of the car as one used for passengers. That which is necessarily implied

7. from specific averments of the complaint is sufficiently averred.

The fourth objection is that it does not allege that the car was under the control of the defendant. It is alleged that the road at that particular time was being

8. operated by the defendant, and the car upon which she was riding was "one of the cars of defendant's road." This is equivalent to charging that the car was one

of the cars used by the defendant in operating the road, and is sufficient after the verdict.

It is further objected that it is not alleged that the plaintiff paid or offered to pay fare, or that she had a pass, or was on the car by contract, invitation, or consent of the defendant. It is alleged that she was a passenger on the car. This averment required her to prove that she had complied with the conditions that constituted her a passenger. How she became a passenger was evidentiary. Like ownership—it is sufficient to allege ownership without alleging how it was acquired. *Gowdy Gas-Well, etc., Co.* v. *Patterson* (1902), 29 Ind. App. 261.

It is also objected that it is not shown that the defendant owed the plaintiff a legal duty; nor shown that the negligence of the conductor and motorman was the negligence of the defendant, or for which the defendant was liable; nor shown that the defendant was guilty of any negligent act; nor that the relation of master and servant existed; nor that the motorman and conductor were acting within the scope of their employment; nor that the negligence of the motorman and conductor was the proximate cause of the plaintiff's injuries.

The plaintiff was a passenger, and, being a passenger, the defendant owed her a duty. In addition to averments noted above, it is alleged that the road was being operated by the use of electricity, and the car upon which the plaintiff was a passenger was in charge of a motorman and conductor; "that she sounded the electric bell provided in said car to be sounded by passengers to announce their desire to leave the car at the nearest crossing; that the motorman in charge of said car stopped the car, * * * and the plaintiff grasped the handhold on the side of the car, placed there for the assistance of passengers entering and departing from said car, and stepped down upon the running-board for the purpose of leaving

said car, and was just in the act of stepping therefrom to the surface of the street, when the conductor in charge of said car carelessly and negligently gave the motorman the signal to go forward, and the motorman carelessly and negligently, immediately, and before the plaintiff could reach the ground, started the car quickly forward" whereby the plaintiff was injured.

A corporation can act only by its agents, and the allegations that a motorman and conductor had charge of "one of the cars of the defendant's road," that is, one of the cars used in operating its road, and upon which the plaintiff was a passenger, sufficiently shows the relation of employer and employes, and, being charged with the management of the car, were performing a duty that devolved upon the employer, and for which the latter stood responsible.

Furthermore, the allegations that the plaintiff rang the bell to announce her wish to alight, and the motorman thereupon stopped the car, and while engaged in the act of getting off, but before she had alighted upon the ground, the motorman negligently, immediately, and before the plaintiff could reach the ground, started the car quickly forward, quite clearly show the negligent act complained of, and that the motorman and conductor were acting within the scope of their employment, and that their negligence was the proximate cause of the plaintiff's injuries. There are even other objections, of less importance, urged to the complaint, but from first to last, including those reviewed, there is not one that could not have been remedied by a motion to make more specific, and they must now be deemed waived. Appellant's first assignment of error cannot be sustained.

(2) An exception was reserved to the giving to the jury of instruction thirteen, requested by appellee, relating to the question of damages, and which directed

the jury that, if they found the plaintiff was entitled to recover, they should award her such an amount as would fairly and reasonably compensate her, and then proceeds: "She is further entitled to a just compensation for all bodily pain and mental suffering, if any, which she has suffered as a result of her injuries from the time she received the same until now, and for such further bodily pain and mental suffering, if any, as you may find from the evidence she may reasonably be expected to endure in the future; and for being deprived of freedom of action, and social meeting and intercourse with her friends, which you shall believe from the evidence in this cause she would have enjoyed, but for the receipt of such injuries, so far as under the evidence in this cause you shall find that she has been in the past and will in the future be deprived of such freedom of action, and such meeting and intercourse with her friends."

Two points are made against this instruction: (1) Because it assumes that appellee has been deprived of freedom of action, and social meeting and intercourse with her friends; (2) because it makes the deprivation of freedom of action, and social intercourse with friends, an element of damages, separate and distinct, and in addition to mental pain and suffering. The instruction does not assume that the plaintiff has been deprived of her freedom, or friends. The language employed very clearly limits recovery to the proof.

The second objection admits of discussion. The phrase complained of is separated from the preceding by a semicolon, and it seems clear from the context that it was intended to give the jury to understand, and that it did understand, that it was proper for them to consider, as a separate element of damages, independent and distinct from mental suffering, the plaintiff's past and future deprivation of the freedom of action, and social intercourse with her friends, and that it was their duty to award her, in addi-

tion to any sum allowed for mental suffering, whatever amount the evidence showed would reasonably compensate her.

If mental suffering and loss of society are separate and distinct elements of recoverable damages, in such cases, then a cause of action must be maintainable for each, for it will not do to say that an independent item of damages may be recovered, when sued for with others, but not in a separate action.

It is a rule of universal acceptance that a person is legally liable only for the natural and proximate results of his negligence.

It is also a rule, not universal, but approved by the decided weight of authority, that a recovery for mental suffering, which, in legal parlance, embraces every description of mental injury, can only be had in cases where the negligent act has been the proximate cause of some degree of physical injury; a broad distinction being made between mental suffering that is attributable to the negligent act, and that which flows directly and naturally from, or which has its origin or exciting cause in, and is coincident with, the physical hurt. *Western Union Tel. Co.* v. *Ferguson* (1900), 157 Ind. 64, 54 L. R. A. 846; *Coy* v. *Indianapolis Gas Co.* (1897), 146 Ind. 655, 664, 36 L. R. A. 535; *Wabash, etc., R. Co.* v. *Morgan* (1892), 132 Ind. 430, 438; *Kalen* v. *Terre Haute, etc., R. Co.* (1897), 18 Ind. App. 202, 63 Am. St. 343; *Chicago City R. Co.* v. *Taylor* (1897), 170 Ill. 49, 57, 48 N. E. 831; *Ward* v. *West Jersey, etc., R. Co.* (1900), 65 N. J. L. 383, 47 Atl. 561, and illustrated cases cited; *Wyman* v. *Leavitt* (1880), 71 Me. 227, 36 Am. Rep. 303; *Johnson* v. *Wells, Fargo & Co.* (1870), 6 Nev. 224, 3 Am. Rep. 245; *Walker* v. *Boston, etc., Railroad* (1902), 71 N. H. 271, 51 Atl. 918; *Consolidated Traction Co.* v. *Lambertson* (1897), 60 N. J. L. 457, 38 Atl. 684; 6 Thompson, Negligence (2d ed.), §§7319, 7320, and notes.

Distress, depression, or injury of any kind to the mind that flows from a secondary or remote result of the physical injury, or as a reflection, as some of the cases put it, or from a subsequent contemplation and brooding of the mind, as others say, is not the subject of actionable damages. Recovery therefor is denied, chiefly, perhaps, for want of some reasonable ground for admeasurement of the damages. Where the plaintiff has suffered a physical hurt the known usual, natural, probable, or frequent consequence, flowing from other like injuries, form some real basis, not always satisfactory, but generally accepted by the courts as a foundation whence the jury may estimate a reasonable compensation. But where the mental injury is not shown to be a natural and direct result of the physical injury, and therefore not a part of it, but a remote consequence, any attempt at compensation can have no surer base than conjecture and speculation. *City of Columbus* v. *Strassner* (1890), 124 Ind. 482, 489; *Linn* v. *Duquesne Borough* (1903), 204 Pa. St. 551, 54 Atl. 341, 93 Am. St. 800, and illustrated cases; *Atchison, etc., R. Co.* v. *Chance* (1896), 57 Kan. 40, 47, 45 Pac. 60; *Bovee* v. *Town of Danville* (1880), 53 Vt. 183, 190; *Keyes* v. *Minneapolis, etc., R. Co.* (1886), 36 Minn. 290, 30 N. W. 888; *Beath* v. *Rapid R. Co.* (1899), 119 Mich. 512, 78 N. W. 537; 6 Thompson, Negligence (2d ed.), §7320.

In the case of *City of Columbus* v. *Strassner, supra,* an instruction to the jury, that in assessing the plaintiff's damages they might take into consideration "any lack of personal enjoyment occasioned by the injury," was held to be erroneous for want of a substantial basis for adjusting such loss by a monetary standard.

In the case of *Linn* v. *Duquesne Borough, supra,* the use of the plaintiff's hands had been permanently impaired by the injury. An instruction on the measure of damages allowed the jury to consider, in addition to the physical and mental injury caused by the accident, "the humilia-

tion and regret that the plaintiff might thereafter feel because of her inability to attend to her household duties and to perform the services she had before performed for her husband." The quoted part of this instruction was held to constitute reversible error.

In the case of *Atchison, etc., R. Co.* v. *Chance, supra,* it was held to be error in the court to refuse to strike out testimony to the effect that the plaintiff was troubled by the sickness and confinement of his wife, and the fear that he would leave her and the child in a dependent and helpless condition.

In the case of *Bovee* v. *Town of Danville, supra,* the plaintiff suffered a miscarriage from the accident, and the jury was directed that "any suffering occasioned thereby, or injury to her feelings," etc., should be compensated. The judgment was reversed because of the last clause quoted, the court saying: "In view of the prominence given the fact of miscarriage, the jury might easily understand that the plaintiff's injured feelings, induced by reflecting upon her calamity, and grieving over her disappointed hopes, was a matter proper for their consideration."

In the case of *Keyes* v. *Minneapolis, etc., R. Co., supra,* it was held that anxiety that others may be injured from the same cause is an improper consideration for the jury.

The case of *Beath* v. *Rapid R. Co., supra,* holds that the mental strain and anxiety of the plaintiff occasioned by the postponement of her marriage, as an enforced result of her injury, is not a proper subject for damages under a general averment of damages for mental suffering.

That part of the instruction complained of is governed by the same principle that rules the foregoing cases. The jury in the preceding part of the charge had been directed, if they found for the plaintiff, to compensate her for all medical attention, nursing, for moneys expended for medical and surgical appliances, and

for such sums as she may reasonably be expected to expend in the future for such purposes, for all loss of earning capacity, past and future, and "for all bodily pain and mental suffering which she has suffered as a result of her injuries, if any, or you shall find from the evidence she may reasonably be expected to endure in the future." Here the instruction should have stopped for two reasons: (1) Being deprived of freedom of action, and social intercourse with her friends, if an injury to the plaintiff proper to be considered, it was so because of regrets and sadness, resulting from such loss, unfavorably affecting her peace of mind, and was therefore embraced within the general term, "all mental suffering," and covered by the preceding part of the charge. (2) Unhappiness resulting from impaired freedom of action, and from being deprived of social intercourse with friends, without special plea or proof, cannot be held to have their origin or inception in the physical injury, but will be presumed to have flowed from contemplation, or brooding over the bodily hurt. Such damages rest, not upon the bodily injury, but wholly upon sentiment, and the mental characteristics of the particular plaintiff. They carry us into a field of hopeless uncertainty. If allowed for the two causes specified, then why not for being deprived of the church, the dance, the theater, and the like? And by what rule of observation, experience, or money standard shall the courts be guided in rendering compensation?

It may be that the verdict would have been the same if the objectionable part of charge thirteen had not been given, but we do not know it, and the appeal must therefore be sustained.

Judgment reversed, with an instruction to grant appellant a new trial.